UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| Wesley C. Lowther, | ) | Civil Action No.: 9:16-CV-3985-RBH |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, | ) ) ) | |
| Defendant. | ) ) | |

Plaintiff Wesley C. Lowther ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). The matter is before the Court for review of the Report and Recommendation of United States Magistrate Judge Bristow Marchant, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina. The Magistrate Judge recommends affirming the Commissioner's decision. [ECF #18].

**Factual Findings and Procedural History**

This Court is tasked with reviewing the denial of benefits for Plaintiff's first application for disability. This time period covers May 2008 through August 26, 2010. Plaintiff initially applied for disability insurance benefits ("DIB") in July 2008, alleging disability beginning two months prior due to anxiety, back problems, seizures, and sleep apnea. Plaintiff's claim was denied initially and upon reconsideration. After he requested and was granted a hearing, the ALJ denied his claim. Plaintiff's request for a review by the Appeals Council was denied, however in October of 2013, the United States District Court vacated the ALJ's decision and remanded the claim back to the Commissioner. [ECF #11-5, Ex. 7A]. While Plaintiff's claim was pending before the district court, Plaintiff filed a second

application for DIB alleging disability beginning August 10, 2010. On February 20, 2013, the ALJ reviewing that application issued a decision awarding Plaintiff benefits beginning August 27, 2010. [ECF # pp. 1183-1193]. Therefore, the present appeal focuses only on whether Plaintiff was disabled from May 6, 2008 to August 26, 2010.

The Magistrate Judge adequately set forth Plaintiff's medical history in his Report and Recommendation (the "R&R"). Briefly stated, Plaintiff alleges he became disabled on May 6, 2008 as a result of his epilepsy, anxiety, back problems, and sleep apnea. The records reveal that as early as 2005, Plaintiff underwent an MRI of his brain. That MRI revealed Plaintiff had a mass within the superior aspect of the right mastoid air cells that was isoattenuating to brain parenchyma, but no cause for the seizure was seen. [ECF #10-8, Ex. 3F]. Since at least that date, he received medical care related to myoclonic jerks and a history of seizures. On December 26, 2007, when Plaintiff sought medical care because he was experiencing chest pain and shortness of breath, his medical records indicate he had seizure disorder, asthma, and anxiety attacks. [ECF #10-7, Ex. 1F]. In early 2008, Plaintiff was seen for medical issues related to tennis elbow and carpal tunnel syndrome, as well as back pain and numbness in his fingers. [ECF #10-8, Ex. 3F]. Then, on May 6, 2008, Plaintiff was involved in a motor vehicle accident and received medical care due to seizure activity. [ECF #10-7, Ex. 1F]. He was again seen on August 24, 2008 for seizure activity and loss of consciousness, and on August 25, 2008, where he reported intermittent headaches. [ECF #10-9, Ex. 4F]. During this period, a CT scan of Plaintiff's head was negative. [ECF #10-9, Ex. 4F]. In September of 2008, Plaintiff's medical notes indicate that he reported his first generalized tonic clonic seizure in 2002; and since that time, he stated he had 10 seizures. [ECF #10-10, Ex. 9F]. Plaintiff reported an occurrence of a seizure on December 29, 2008 and in January of 2009, he stated he had experienced 3 grand mal seizures since May of 2008, with small

2

seizures occurring, as well. By February of 2009, Plaintiff reported an absence of seizures since he began taking Lamictal. Over this relevant time period, Plaintiff has also sought medical care for spondylosis (his back condition) and diabetes. [ECF #10-9, Ex. 8F]. On March 3, 2009, Plaintiff received a 100% disability evaluation from the Veterans Administration Medical Center. Specifically, his adjustment disorder with anxiety was 70%, sleep apnea was 50%, seizure disorder was 40%, lumbar strain was 10%, and tinnitus was 10% disabling. [ECF #10-12, Ex. 13F]. Plaintiff was also seen and fitted for hearing aids on May 1, 2009.[ECF #10-12, Ex. 17F]. After a seizure in the summer of 2009, followed by small seizures approximately once a month for that year, Plaintiff was seen by a neurologist on April 14, 2010. After this appointment, he was again seen in September of 2010 (after the relevant time period), where he reported approximately 20 petit mal seizures since the April 2010 appointment. [ECF #10-12, Ex. 18F].

Plaintiff has also been seen for mental health problems. In June of 2008, Plaintiff reported trouble concentrating and keeping his thoughts straight, as well as feeling sad and experiencing trouble sleeping. Plaintiff appears to have reported that his mental issues began around the same time as his seizure onset in 2002. Plaintiff was enrolled in the Mental Health Center. [ECF #10-8, Ex. 3F]. Plaintiff continued treatment for his mental issues throughout the remainder of 2008. In December of 2008, a mental health therapist wrote that Plaintiff experienced mild, intentional tremors likely due to a side effect of Depakote, a medication he was taking for seizure disorder. [ECF #10-12, Ex. 16F]. He continued to seek treatment for depressed mood and sleeping difficulties in 2009 and 2010.

On September 3, 2008, state agency psychologist Dr. Mary K. Thompson noted that Plaintiff had a personality disorder, a panic disorder and an impulse control disorder. On September 17, 2008, state agency physician Dr. Katrina B. Doig completed a physical evaluation wherein she opined

Plaintiff had no exertional limitations, but provided some physical limitations as well as limited his exposure to hazards. On January 14, 2009, state agency psychiatrist Dr. Richard L. Gann concluded Plaintiff suffered from panic disorder and impulse control disorder. On January 26, 2009, state agency physician Dr. William Cain came to similar findings and opinions as Dr. Doig.

In September 2010, an ALJ held a second hearing on Plaintiff's initial disability claim, and thereafter issued an unfavorable opinion. Plaintiff appealed this decision to the Appeals Council, and the Appeals Council remanded the matter back to the ALJ in June of 2015. Another ALJ then held a third hearing in February 2016 and also found Plaintiff was not disabled prior to August 27, 2010. The Appeals Council denied Plaintiff's request for review, making this ALJ's findings the final decision of the Commissioner of Social Security.

The ALJ's findings were as follows:

> (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.
>
> (2) The claimant did not engage in substantial gainful activity during the period from his alleged onset date of May 6, 2008 through August 26, 2010 (20 C.F.R. 404.1571 *et seq.*).
>
> (3) Through August 26, 2010, the claimant had the following severe impairments: degenerative disc disease, seizure disorder, asthma, panic disorder with agoraphobia, and impulse control disorder, not otherwise specified (20 C.F.R. 404.1520(c)).
>
> (4) Through August 26, 2010, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).
>
> (5) After careful consideration of the entire record, I find that, through August 26, 2010, the claimant had the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c). Specifically, the claimant was capable of lifting and/or

carrying 50 pounds occasionally and 25 pounds frequently. He was capable of standing and/or walking about 6 hours in an 8-hour workday and sitting about 6 hours in an 8-hour workday. He could never climb ladders, ropes, or scaffolds, and he could frequently climb ramps and/or stairs, balance, stoop, kneel, crouch and crawl. He had to avoid concentrated exposure to fumes, odors, dusts, gases, and other respiratory irritants, and all exposure to workplace hazards. The claimant was limited to unskilled work, defined as performing simple, routine and/or repetitive tasks. He was further limited to no interaction with the public and no team type interaction with coworkers but incidental contact was allowed.

(6) Through August 26, 2010, the claimant was unable to perform any past relevant work (20 C.F.R. 404.1565).

(7) The claimant was born on August 3, 1970 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged onset date (20 C.F.R. 404. 1563).

(8) The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10) Through August 26, 2010, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. 404.1569 and 404.1569(a)).

(11) The claimant was not under a disability, as defined in the Social Security Act, at any time from May 6, 2008, the alleged onset date, through August 26, 2010 (20 C.F.R. 404.1520(g)).

[ECF #11-4, pp. 16-28].

On December 22, 2016, Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. [ECF #1]. Both Plaintiff and Defendant filed briefs [ECF #14, ECF #15,

ECF #17], and the Magistrate Judge issued her Report and Recommendation ("R&R") on December 14, 2017, recommending that the Commissioner's decision be affirmed [ECF #18]. The Magistrate Judge considered all of the medical testimony within the record and determined that the ALJ properly addressed the relevant medical findings, as well as considered Plaintiff's testimony in determining that the ALJ's decision is supported by substantial evidence. [ECF #18, p. 12]. Plaintiff filed objections on December 28, 2017. [ECF #19]. Plaintiff objects to the recommendation of the Magistrate Judge based on the following arguments: (1) the ALJ did not adequately consider Plaintiff's combination of impairments; (2) the ALJ did not adequately account for Plaintiff's moderate difficulties in concentration, persistence; and pace; (3) the ALJ did not properly explain the deviation from the VA disability rating; and (4) the ALJ did not reasonably consider Plaintiff's credibility. Defendant responded to these objections on January 11, 2018. [ECF #21]. This Court will now consider these objections in turn.

**Standard of Review**

**I.  Judicial Review of the Commissioner's Findings**

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58

(4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## II. The Court's Review of the Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the Report and Recommendation ("R & R") to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for

7

clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

**Applicable Law**

Under the Act, Plaintiff's eligibility for the sought-after benefits hinges on whether he is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that his impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving he could not perform his customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment

of the claimant's residual functional capacity leads to the conclusion that he can no longer perform his previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1). Appendix 2 of Subpart P governs the interrelation between these vocational factors.

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing past relevant work;[2] and (5) whether the impairment prevents him from doing substantial gainful activity. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed Impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

A claimant is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). Once an individual has made a prima facie showing of disability by establishing the inability to return to past relevant work, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a vocational expert demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to past relevant work. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

## Analysis

Plaintiff first objects to the Magistrate Judge's recommendation that the ALJ properly considered the combined effects of Plaintiff's severe and non-severe impairments. A review of the ALJ's decision reflects the fact that the ALJ did give consideration to both Plaintiff's severe and non-severe impairments, including both Plaintiff's mental impairments and his seizure disorder. However, this Court has also considered Plaintiff's specific issue raised in the objections with respect to the ALJ's RFC assessment and the fact that it does not adequately reflect the frequency of Plaintiff's seizures.

The Magistrate Judge agreed with the ALJ that the overall medical records do not strongly support Plaintiff's contentions that during the relevant time period for disability benefits, he was

consistently having monthly seizures. However, Plaintiff argues that the Magistrate Judge's reliance on the ALJ's conclusion that Plaintiff's reported seizures occurred considerably less frequently than he claims constitutes reversible error. The medical record specifically referred to by Plaintiff to support this contention is dated April 14, 2010. The medical record includes the following notation: "Mr. Lowther . . . has had a Grand Mal last summer 2009 and since has had only small seizures, 1/month x 1 year." This medical note is the source of Plaintiff's argument that the Magistrate Judge, like the ALJ, misstated the record.[3] Plaintiff submits that this notation indicates that Plaintiff would miss work "frequently" for his seizures. Defendant argues that any misstatement of the record constitutes harmless error.

This Court acknowledges that the medical record appears to suggest Plaintiff may have had several small seizures over the course of several months. This Court is also mindful of the fact that the Report and Recommendation includes the ALJ's statement that Plaintiff reported only small seizures "once a year." While this Court cannot re-weigh the evidence in the record, this Court's review of the ALJ's decision and subsequent R&R reveals that the decision appears to rely heavily on the understanding that Plaintiff was not having seizures with any regularity. However, the notation in the record from April 2010 seems to clearly suggest that Plaintiff otherwise endured monthly, as opposed to yearly, seizures over a least some time span for the time period in question. This Court agrees that the misunderstanding of this record may have altered the ALJ's decision. Moreover, assuming that the notation does indicate that for several months, Plaintiff experienced at least smaller seizures on a monthly basis, the Magistrate Judge does not appear to reconcile the apparent mistake in the ALJ's

---

[3] The Magistrate Judge initially noted within the medical history that on April 14, 2010, Plaintiff "reported he had had a grand mal seizure in the summer of 2009, but thereafter had only had small seizures, approximately once a month for the prior year."

11

decision. This Court finds that it is unclear whether the ALJ adequately considered the medical evidence of record, given the fact that the ALJ appears to have misunderstood the notation within the medical record. Accordingly, given the apparent misstatement by the ALJ that a notation indicated Plaintiff experienced a yearly seizure, rather than monthly seizures, and subsequent reliance by the ALJ on this record to conclude Plaintiff was not disabled, this Court cannot find that the ALJ's decision is supported by substantial evidence. This is a sufficient basis for remand.

Because this Court is remanding this case for further consideration, this Court declines to address Plaintiff's remaining objections. However, the Commissioner should consider Plaintiff's remaining objections on remand.

## **Conclusion**

The Court has thoroughly reviewed the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections to the R & R, Defendant's response to those objections, and the applicable law. For the foregoing reasons, the Court respectfully rejects the recommendation of the Magistrate Judge [ECF #18], and remands this case for further fact finding consistent with this Order. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision is reversed and remanded to the Commissioner for further administrative action.

**IT IS SO ORDERED.**

Florence, South Carolina  
January 31, 2018

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge